# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 4045 | **DATE** | February 28, 2012 |
| **CASE TITLE** | *Forrest David Laidley v. United States* | | |

**DOCKET ENTRY TEXT**

Movant Forrest David Laidley's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1-1] is denied. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

■ [ For further details see text below.]　　　　　　　　　　　　　　　　　　　　　Docketing to mail notices.

00:00

## STATEMENT

Movant Forrest David Laidley pleaded guilty to one count of mail fraud, *see* 18 U.S.C. § 1341, and one count of bank fraud, *see* 18 U.S.C. § 1344. Specifically, he pleaded guilty to participating in a scheme to defraud individuals through the sale of interests in a limited partnership and short term/high interest promissory notes in connection with various real estate projects. Although Laidley admitted his involvement in a scheme to defraud, he reserved the right to contest at sentencing the government's allegations that his scheme began in 1999, that he defrauded individuals of more than $10 million, and that the number of victims exceeded 50. At sentencing, the court found that his amount of loss exceeded $7 million while his number of victims exceeded 50. As a result, it calculated a total offense level of 33, a sentencing range of 135-168 months, and imposed a sentence of 60 months.

Before the court is Mr. Laidley's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, in which Mr. Laidley alleges that his attorney's performance was ineffective. According to Mr. Laidley, counsel failed to effectively argue that the government and probation officer's calculations of his amount of loss and number of victims was grossly overstated. Had the court adopted the calculation Mr. Laidley now advances, his total offense level would have been 25, and his sentencing range would have been 57-71 months.

In order to establish ineffective assistance of counsel in a motion brought under § 2255, Mr. Laidley must show both that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the allegedly deficient performance so prejudiced his defense that it denied him a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 690-91 (1984); *Bethel v. United States*, 458 F.3d 711, 714-15 (7th Cir. 2006). To show prejudice, Mr. Laidley bears the burden of establishing that but for counsel's deficient performance, there was a reasonable probability that the outcome of the proceeding would have been more favorable to him. *See Freeman v. Chandler*, 645 F.3d 863, 869 (7th Cir. 2011).

Mr. Laidley contends that his attorney's performance was ineffective for three reasons. First, he contends that

counsel failed to provide to the court a chart and memorandum Mr. Laidley had prepared to challenge the government's calculation of his amount of loss, the number of victims, and when the scheme began. Second, he contends that counsel failed at sentencing to challenge arguments made by the government in its written sentencing memorandum. Third, he contends that counsel failed to challenge the probation officer's inclusion under the U.S. Sentencing Guidelines of a two-level enhancement under what was then U.S.S.G. § 2B1.1(b)(14) for a scheme that involved deriving more than $1,000,000 from a financial institution.

Although Mr. Laidley refers to three separate bases for finding that his attorney was ineffective, upon examination, the first two are essentially identical. Specifically, the gist of Mr. Laidley's second basis is that defense counsel failed to challenge the positions taken by his probation officer and the government at sentencing. But the only evidence he identifies that could have challenged the position of the probation officer and government was the chart and memorandum he had prepared, the subject of his first basis for finding ineffective assistance of counsel. Because each of the first two bases is rooted in the same argument that counsel was ineffective for not making use of Mr. Laidley's chart and memorandum, the court will address his second basis in conjunction with his first.

*1.     Failure to Present Chart and Memorandum*

According to Mr. Laidley, there is a reasonable probability that, had defense counsel presented at sentencing the chart and memorandum that Mr. Laidley had prepared, the court would have adopted a more favorable calculation of his sentencing range under the U.S. Sentencing Guidelines. Specifically, he contends that there is a reasonable probability the court would have found that his amount of loss was $1-2 million rather than the approximately $7 million amount calculated by the probation officer, and that his number of victims was less than 50.

According to Mr. Laidley, his chart identifies the names of investors, along with the date and amount of their investment. He contends that it also shows how long it took him to repay each investment, if ever. Finally, he contends that it shows his net worth each quarter during the period 2000 through 2004, and compares it to the investments he was obligated to repay. According to Mr. Laidley, the chart demonstrates that his net worth during each quarter prior to September 2002 substantially exceeded the total amount of outstanding investments he was obligated to repay.

Meanwhile, the memorandum that Mr. Laidley prepared sets out the significance he attributes to the data on the chart. For instance, according to Mr. Laidley, evidence that his assets exceeded his obligations prior to September 2002, demonstrates that his fraudulent scheme began only after September 2002. By counting only those investments made after September 2002, Mr. Laidley contends that his amount of loss drops to $1,020,000, and his number of victims drops to 17. Mr. Laidley also contends in the memorandum his real estate projects began in 1999 as legitimate businesses, and it was the collapse of the real estate development market following the events of September 11, 2001, that caused him to begin concealing information about the sustainability of his projects from potential investors.

Mr. Laidley has failed to establish that the court would have imposed a more favorable sentence on him had his counsel presented Mr. Laidley's chart or memorandum at sentencing. To begin, Mr. Laidley's argument that counsel failed to challenge the government and probation officer's calculation of his loss amount and number of victims is unfounded. Mr. Laidley set out his disagreement with the government's position in his plea agreement. He also filed a written objection to the calculations in his sentencing memorandum, in which he presented the same arguments he makes now: that his real estate developments started as legitimate

businesses, that his fraudulent scheme began no earlier than 2002, and that he engaged in the scheme only because of the negative impact of the September 11, 2001, attacks on the real estate development market. Thus, by the time of sentencing, the court had been apprised by defense counsel of Mr. Laidley's challenges to the amount of loss and number of victims.

In addition, Mr. Laidley has failed to establish a reasonable probability that the chart and accompanying memorandum he prepared would have persuaded the court to favor his calculations over the government and probation officer's. Although Mr. Laidley contends that the chart is based on data compiled by the same independent accounting source used by the government, his contention cannot be verified because the data he used is nowhere in the record. Moreover, the chart appears to be incomplete. For instance, the government's calculation includes the $25,000 loss that Paul and Ann Ostrander claimed on a Financial Impact Statement Worksheet they submitted. However, Mr. Laidley does not identify the Ostranders as investors, or explain why they appear on the government's list of victims but not his.

Furthermore, even if the court were to accept the information on the chart as being complete and accurate, the chart would still fail to support Mr. Laidley's position that his fraud could not have begun prior to 2002. For instance, assuming the chart establishes that Mr. Laidley's personal assets exceeded his obligations to investors prior to 2002, the chart does not rule out fraud prior to 2002: a defendant could intend never to repay an obligation, even if he had the means to repay it.

Mr. Laidley's argument that his fraud could not have begun prior to 2002 is also at odds with his own admission in his plea declaration that he was actively scheming to defraud as early as July 20, 2001, the date on which he provided a bank with a forged signature in order to obtain a $1,500,000 loan, the factual basis for Count IX. In addition, he has not disputed the Presentence Investigation Report's statement that beginning in 2001, he represented to purchasers of promissory notes that the notes were secured by parcels of land that, in fact, neither he nor his company actually owned.

Mr. Laidley has failed to establish any prejudice attributable to counsel's alleged failure to use his chart and memorandum at sentencing. Accordingly, the chart and memorandum do not provide a basis to support Mr. Ladiley's allegations of ineffective assistance of counsel.

## 2. Two-Level Enhancement under then-U.S.S.G. § 2B1.1(b)(14)

Next, Mr. Laidley argues that counsel was ineffective for failing to object to the probation officer's inclusion of a two-level enhancement under U.S.S.G. § 2B1.1(b)(14) for a scheme that derived more than $1,000,000 from a financial institution. However, Mr. Laidley has not identified what objection counsel could have made. In fact, Mr. Laidley has failed to develop any argument in support of his contention, which is limited to a single sentence:

> Defense Counsel does not challenge Probation Officer's 2 point enhancement pursuant to Section 2B1.1(b)(14) even though the Government had not included this in its calculations and most importantly evidence Defendant possessed and shared with Defense Counsel at the time of the Probation Officer's Report would show that the loan value at the time referenced was less than $1,000,000, and that the 2 point enhancement should not apply.

Motion [1-1] at 9. By failing to develop his argument, such as identifying the evidence he purportedly

| STATEMENT |
|---|

provided counsel about the value of the loan, he has forfeited it. *See White Eagle Cooperative Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009) (undeveloped arguments unsupported by citations to authority are forfeited). In any event, Mr. Laidley admitted in his plea declaration that as part of his scheme he provided a forged signature to Northside Community Bank in order to obtain a $1,500,000 loan, the very loan upon which the probation officer based the § 2B1.1(b)(14) enhancement. Accordingly, Mr. Laidley has failed to establish that any objection at sentencing to the § 2B1.1(b)(14) enhancement would have likely succeeded.

## CONCLUSION

For the reasons stated, Mr. Laidley has failed to establish a reasonable probability that, but for counsel's alleged failure to present the defendant's chart and memorandum at sentencing, the court would have adopted a more favorable calculation of his sentencing range, or that it would have declined to assess the 2-level enhancement under then-§ 2B1.1(b)(14). As a result, he has failed to establish prejudice, and has therefore failed to establish that his counsel was ineffective, especially in light of the fact that counsel obtained a sentence of 60 months compared to a sentencing range of 135-168 months. *See Gant v. United States*, 627 F.3d 677, 682 (7th Cir. 2010) (the "failure to establish either deficience or prejudice is fatal" to a claim of ineffective assistance of counsel). Accordingly, his motion to vacate, correct, or set aside his sentence is denied.

rs/cpb